# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

WESLEY JEFFERSON                                                              PLAINTIFF
ADC #104933

v.                                   5:18cv00200-JM-JJV

KEITH WADDLE, Disciplinary Hearing Officer,
ADC, Central Unit; *et al.*                                                   DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.  INTRODUCTION

Wesley Jefferson ("Plaintiff"), an inmate at the Varner Supermax Unit of the Arkansas Department of Correction ("ADC"), filed this action *pro se* pursuant to 42 U.S.C. § 1983. (Doc. Nos. 2, 4.) In his Amended Complaint, he alleges Defendant Terry Gibson, a correctional officer, subjected him to excessive force on August 21, 2017. (Doc. No. 4 at 19-20.) He also states related claims against Defendants Wendy Kelley, ADC Director, and James Gibson, Warden of the Varner and Varner Supermax Units, for failure to train and supervise (*Id.* at 11-16) and against Defendant Ashlee S. Shabazz, a correctional officer, for the falsification of an incident report (*Id.* at 20-21).[1] Plaintiff seeks compensatory and punitive damages as well as injunctive relief "prohibiting so said conduct." (*Id.* at 22.)

Defendants have now filed a Motion for Summary Judgment, contending Plaintiff failed to exhaust his administrative remedies against Defendants Kelley, James Gibson, and Shabazz and that Defendant Terry Gibson is entitled to judgment as a matter of law on Plaintiff's claim against

---

[1] Plaintiff's Amended Complaint included additional claims against additional Defendants, all of which were previously dismissed without prejudice. (Doc. Nos. 5, 15.)

him. (Doc. Nos. 26-28.) Plaintiff has not responded, and this matter is now ripe for a decision. After careful review, and for the following reasons, I find the Motion for Summary Judgment should be GRANTED, save for the requests that a strike be issued pursuant to 28 U.S.C. § 1915(g) and that the case be dismissed with prejudice in its entirety. *See Langford v. Norris*, 614 F.3d 445, 457 (8th Cir. 2010) (suit must be dismissed without prejudice if the plaintiff was required to exhaust yet failed to do so). Plaintiff's claim against Defendant Terry Gibson should be DISMISSED WITH PREJUDICE; his remaining claims should be DISMISSED WITHOUT PREJUDICE.

## II.     SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a

reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. ANALYSIS

#### A. Defendants Wendy Kelley, James Gibson, and Ashlee S. Shabazz

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (per curiam). Exhaustion under the PLRA is mandatory. *Jones*, 549 U.S. at 211. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to properly exhaust. *Id.* Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id.*

The grievance policy of the Arkansas Department of Correction in effect at the time of the alleged constitutional violations was Administrative Directive 14-16, and Plaintiff's allegations are governed by that Directive. (Doc. Nos. 28-1, 28-2 at 2.) Pursuant to the Directive, an inmate is required to attempt informal resolution of a problem or complaint prior to filing a formal grievance. (Doc. No. 28-1 at 5.) This is accomplished by completing and submitting the Unit Level Grievance Form within fifteen days after the occurrence of the incident. (*Id.*) The form

must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id*. at 5-6.) Following an attempt at informal resolution, an inmate may proceed by filing a formal grievance on the same Unit Level Grievance Form. (*Id*. at 8.) The warden or his designee must provide a written response within twenty working days of receipt. (*Id*. at 10.) If dissatisfied with the response, the inmate may appeal within five working days to the appropriate Chief Deputy/Deputy/Assistant Director. (*Id*. at 11.) The Chief Deputy/Deputy/Assistant Director must provide a written response within thirty working days. (*Id*. at 12.) "A written decision or rejection of an appeal at this level is the end of the grievance process." (*Id*.) Administrative Directive 14-16 includes the following warning:

> Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC. Inmates must fully exhaust the grievance prior to filing a lawsuit. Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

(*Id*. at 4-5.)

Defendants Kelley, James Gibson, and Shabazz contend Plaintiff did not file or fully exhaust any grievance against them pertaining to the claims in this lawsuit. (Doc. No. 27 at 5.) In support of their argument, they submit the Affidavit of Terri Grigsby-Brown, the ADC's Grievance Coordinator. (Doc. No. 28-2.) According to her testimony, Plaintiff did not file any grievance alleging a failure to train and supervise on the part of Defendants Kelley or James Gibson, nor did he file any grievance alleging Defendant Shabazz falsified any records. (*Id*. at 2.) Ms. Grigsby-Brown states Plaintiff filed and exhausted only one grievance, VSM-17-02858, in the relevant timeframe. (*Id*. at 1.) In that grievance, which Defendants have also submitted, Plaintiff named only Defendant Terry Gibson and referenced only the excessive force incident of August 21, 2017.

5

(Doc. No. 28-3 at 5.)  He did not name Defendants Kelley, James Gibson, or Shabazz and did not allege any wrongdoing on their behalf.

The evidence plainly shows Plaintiff failed to file or fully exhaust any grievance against Defendants Kelley, James Gibson, and Shabazz pertaining to the claims in this lawsuit.  Therefore, he failed to "complete the administrative review process in accordance with the applicable procedural rules" with respect to his claims against these Defendants.  *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88).  Accordingly, Plaintiff's claims against these Defendants should be dismissed without prejudice.

    **B.**    **Defendant Terry Gibson**

According to Plaintiff's Amended Complaint, Defendant Terry Gibson subjected him to excessive force on August 21, 2017, at approximately 7:17 p.m., when he "aggressively shoved" Plaintiff, placed him in a "bear hug type lock," and slammed him face-down on the floor.  (Doc. No. 4 at 19.)  Plaintiff alleges he was pinned to the floor by Officer Gibson's weight, unable to get up and "no longer posing any type of threat," when Officer Gibson began to "barbariously beat the plaintiff with two closed fist[s] unjustifiably in the back of his head," landing between fifty-six and one hundred punches.  (*Id*. at 19-20.)  Plaintiff states a sergeant "football tackled" Officer Gibson off his back.  (*Id*. at 20.)

        1.    Official Capacity Claim

Plaintiff appears to seek relief from Officer Gibson in both his official and individual capacities.  (Doc. No. 4 at 22.)  To the extent he seeks money damages against this Defendant in his official capacity, that claim is barred pursuant to the doctrine of sovereign immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and,

6

as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity). Accordingly, I recommend any official capacity claim for money damages be dismissed. To the extent Plaintiff seeks injunctive relief against Officer Gibson in his official capacity, that claim should be dismissed on the basis that Plaintiff has failed to establish a constitutional violation, as discussed below.

        2.      Personal Capacity Claim

Officer Gibson contends he is entitled to qualified immunity on Plaintiff's claim against him in his personal capacity. (Doc. No. 27 at 9-10.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*,

533 U.S. 194, 201 (2001).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  *Id*.  Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

When addressing an excessive force claim brought under § 1983, a court's analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct."  *Id*.  Because of Plaintiff's status as a prisoner, his excessive force claim is to be evaluated under the Eighth Amendment.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

In an Eighth Amendment excessive force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Under this approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing

willingness that it occur." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). In determining whether a use of force was wanton and unnecessary, it is also proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* Thus, the extent of the resulting injury, "while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement" for proving an Eighth Amendment excessive force claim. *Williams v. Jackson*, 600 F.3d 1007, 1012 (2010) (citing *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam)).

Officer Gibson contends the force he used on Plaintiff was applied in a good-faith effort to maintain or restore discipline, not maliciously and sadistically to cause harm. (Doc. No. 27 at 7.) After careful review of all the evidence, which includes surveillance video of the incident and affidavits from Officer Gibson and the sergeant who came to assist him, I agree. According to Officer Gibson's Affidavit, he came to Plaintiff's barracks to deliver two brooms to the barracks porter. (Doc. No. 28-4 at 1.) When he opened the barracks door, Plaintiff immediately came out, which he was not authorized to do, and "got into [Officer Gibson's] personal space." (*Id.*) Officer Gibson says Plaintiff was trying to take the brooms from him and did so. (*Id.*) Plaintiff ignored Officer Gibson's orders to give the brooms back, instead threatening him and saying he was going to "bust" him with the brooms. (*Id.* at 1-2.) Officer Gibson says he secured the barracks door and then tried to regain control of the brooms, fearing Plaintiff would use them as weapons against him; when Plaintiff refused to give the brooms back, Officer Gibson took him to the ground "to minimize the threat." (*Id.* at 2.) Plaintiff was on his back, with Officer Gibson on top of him, and a physical altercation ensued. (*Id.*) Plaintiff threw "several punches," with one striking Officer Gibson in the face. (*Id.*) Officer Gibson then returned two punches. (*Id.*) According to Officer

Gibson's Affidavit, two other correctional officers, including Sergeant Tarrell McEwen, arrived to assist him "[a]lmost immediately after" he took Plaintiff to the ground. (*Id*.) The other officers secured Plaintiff, who was on the floor for less than a minute before being escorted away. (*Id*. at 3.)

Officer Gibson's testimony is corroborated by Sergeant McEwen's Affidavit. He says he answered a radio call for assistance and found Officer Gibson on the floor, trying to restrain Plaintiff. (Doc. No. 28-5 at 1.) Plaintiff was "physically resisting and was not obeying any of the orders for him to stop resisting and submit to handcuffs." (*Id*.) Sergeant McEwen says he witnessed Plaintiff "trying to punch" Officer Gibson and that Officer Gibson did strike Plaintiff "in an attempt to regain control of the situation," using the appropriate amount of force to do so. (*Id*. at 1-2.) Sergeant McEwen further states that after Officer Gibson was able to get off of Plaintiff and he himself tried to restrain Plaintiff, Plaintiff tried to bite him on his calf muscle. (*Id*. at 2.) He had to put Plaintiff in a "wrist lock" in order to get him handcuffed. (*Id*.) Like Officer Gibson, Sergeant McEwen says Plaintiff was on the floor for less than a minute before he was handcuffed and escorted away. (*Id*.)

Both Affidavits are corroborated by the video evidence. Officer Gibson can be seen approaching the barracks door with brooms in his hand. (Doc. No. 24 at 07:15:37.) As soon as he opens the door, Plaintiff exits the barracks and begins speaking to Officer Gibson, getting close enough to him that their faces are almost touching. (*Id*. at 07:15:45.) Plaintiff then begins to push Officer Gibson against the door. (*Id*. at 07:15:54.) He holds Officer Gibson against the door for approximately fifteen seconds before Officer Gibson tries to push him away and Plaintiff grabs the brooms. (*Id*. at 07:16:10.) Plaintiff then approaches Officer Gibson menacingly, pushing up against him with the brooms in hand. (*Id*. at 07:16:13.) After approximately ten seconds, Officer

Gibson grabs Plaintiff around the torso with both arms and they fall to the ground just outside the view of the camera. (*Id*. at 07:16:24.) Two other officers can be seen entering the area only seconds later, with others following closely behind. (*Id*. at 07:16:28.) Officer Gibson can be seen in view of the camera as the other officers work to restrain Plaintiff. (*Id*. at 07:16:33.) Plaintiff is brought to his feet and led away in handcuffs only about thirty seconds later. (*Id*. at 07:17:01.)

This evidence clearly shows that Plaintiff acted aggressively toward Officer Gibson and instigated the physical altercation. He came out of the barracks unauthorized, immediately took on an aggressive posture toward Officer Gibson, pushed him against the barracks door, took the brooms from him, and threatened to use the brooms as weapons against him, ignoring Officer Gibson's orders to return the brooms. Officer Gibson's perception that Plaintiff posed a threat to him was obviously reasonable, and he used a reasonable amount of force in taking Plaintiff to the ground. Plaintiff himself implies he did constitute a threat, stating he "no longer" posed a threat after Officer Gibson took him to the ground and thus "regained control of the situation and the plaintiff." (Doc. No. 4 at 19.)

Although the ensuing altercation happened outside the view of the camera, Plaintiff's assertion that Officer Gibson punched him between fifty-six and one hundred times is simply not believable. The video evidence shows that only about four seconds elapsed between the time Plaintiff was taken to the ground and the other officers arrived, and Officer Gibson got off of Plaintiff and stood to the side, in view of the camera, immediately thereafter. The United States Supreme Court has held that when uncontested video evidence is submitted in support of a motion for summary judgment, the facts should be viewed in the light depicted by the video evidence. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). This is so despite the fact that summary judgment evidence is normally to be viewed in the light most favorable to the nonmoving party: "When

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380.

Moreover, Plaintiff's Amended Complaint does not allege he suffered any injury. Plaintiff did say in his grievance that he sustained a "big ball size knot on the back left hand side of [his] head." (Doc. No. 28-3 at 5.) Even assuming Plaintiff sustained a knot to his head, the minor extent of this injury is further indication the force used was reasonable and necessary under the circumstances – and that Officer Gibson did not, as Plaintiff claims, punch him fifty-six to one hundred times. *See Whitley*, 475 U.S. at 321.

For these reasons, Plaintiff has failed to show Officer Gibson applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson*, 503 U.S. at 7. Because the facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of a constitutional or statutory right, Defendant Terry Gibson is entitled to qualified immunity on Plaintiff's claim against him in his personal capacity.

### C. 28 U.S.C. § 1915(g) Strike

Defendants have requested Plaintiff be issued a strike pursuant to 28 U.S.C. § 1915(g) "because the video shows that the claim against Defendant Terry Gibson for excessive force is undeniably frivolous." (Doc. No. 26 at 3.) While that may be so, Plaintiff's claim against Defendant Terry Gibson is only one of several in this action. Plaintiff's claims against Defendants Kelley, James Gibson, and Shabazz are recommended for dismissal on the basis that he failed to exhaust his administrative remedies. Such a dismissal is not a strike under § 1915(g). *Owens v. Isaac*, 487 F.3d 561, 563 (8th Cir. 2007) (per curiam). And the United States Court of Appeals for the Eighth Circuit has suggested an entire action must be dismissed for one of the enumerated

reasons for a strike to issue.  *Orr v. Clements*, 688 F.3d 463, 466 (8th Cir. 2012) (citing *Tolbert v. Stevenson*, 635 F.3d 646, 650-51 (4th Cir. 2011) ("§ 1915 equates 'action' with an entire 'case' or 'suit'").  Therefore, a strike should not issue in this case.

### IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 26) be GRANTED.

2. Plaintiff's remaining claims against Defendants Wendy Kelley, James Gibson, and Ashlee S. Shabazz be DISMISSED without prejudice for failure to exhaust administrative remedies; his claim against Defendant Terry Gibson be DISMISSED with prejudice; and his cause of action (Doc. No. 4) be DISMISSED.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 19th day of November, 2018.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE